**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

JAMES N.,

                                        Plaintiff,

        v.                                                          3:18-CV-1324
                                                                    (CFH)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

_____

**APPEARANCES:**                              **OF COUNSEL:**

Lachman, Gorton Law Firm                 PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, New York 13761-0089
Attorneys for plaintiff

Social Security Administration           LUCY WEILBRENNER, ESQ.
625 JFK Building
15 New Sudbury Street
Boston, Massachusetts 02203
Attorneys for defendant

**MEMORANDUM-DECISION & ORDER**[1]

        Plaintiff James N.[2] brings this action pursuant to 42 U.S.C. § 405(g) seeking

review of a decision by the Commissioner of Social Security ("Commissioner" or

"defendant") denying his applications for disability and disability insurance benefits.

_____

        [1]    Parties consented to review of this matter by a Magistrate Judge pursuant to 28 U.S.C. §
636(c), Federal Rule of Civil Procedure 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18.

        [2]    In accordance with guidance from the Committee on Court Administration and Case
Management of the Judicial Conference of the United States, which was adopted by the Northern District
of New York in 2018 to better protect personal and medical information of non-governmental parties, this
Memorandum-Decision & Order will identify plaintiff by first name and last initial.

Dkt. No. 1 ("Compl.").  Plaintiff moves for a finding of disability, and the Commissioner cross moves for a judgment on the pleadings.  Dkt. Nos. 9; 17, 18.  For the reasons that follow, the determination of the Commissioner is affirmed, the Commissioner's motion for judgment on the pleadings is granted, and plaintiff's motion for judgment on the pleadings is denied.

## I. Background

Plaintiff was born on October 4, 1971.  T at 191.[3]  He attended college for one year.  Id. at 37.  He most recently worked in 2011, where he "cut wires to different lengths for coils."  Id. at 33.  Plaintiff lives with his mother, sister, his sister's boyfriend, and her boyfriend's son.  Id. at 41.  Plaintiff has a girlfriend and visits her at her apartment.  Id. at 42.  He manages his own finances.  Id. at 43.  On July 13, 2015, plaintiff protectively filed a Title II application for disability and disability insurance benefits, alleging disability beginning on June 12, 2015.  Id. at 191.  His claims were denied on October 26, 2015.  Id. at 116.  Plaintiff requested a hearing, and a hearing was held before Administrative Law Judge ("ALJ") Kenneth Theurer on November 13, 2017.  Id. at 26-57.  On October 10, 2018, the Appeals Council denied plaintiff's request for review, making the findings the final determination of the Commissioner.  Id. at 1.  Plaintiff commenced this action on November 13, 2018.  Dkt. No. 1 ("Compl.").

---

[3]  References to the administrative transcript will be cited as "T" and page citations will be to the page numbers in the bottom right-hand corner of the administrative transcript.  All other citations to documents will refer to the pagination generated by the Court's electronic filing system, CM/ECF, and will reference the page numbers at the documents' header, and not the pagination of the original documents.

## II. Discussion

### A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)). The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original) (internal quotation marks omitted). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)). However, if the correct legal standards were applied and the ALJ's finding is supported by supported by substantial evidence, such finding must be

3

sustained, "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted); Venio v. Barnhart, 213 F.3d 578, 586 (2d Cir. 2002).

## B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. § 423(d)(1)(A). A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience. Id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3). Additionally, the severity of the impairment is "based [upon] objective medical facts, diagnoses or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience." Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. §

4

404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added). The plaintiff bears the initial burden of proof to establish each of the first four steps. See DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. Id. at 1180 (citing Berry, 675 F.2d at 467).

Next, an ALJ is to assess the degree of functional limitation, or the impact the claimant's mental limitations have on the claimant's "ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 404.1520a(c). The

5

ALJ must assess the claimant's degree of functional limitation in four functional areas: (1) "[a]ctivities of daily living," (2) "social functioning," (3) "concentration, persistence, and pace," and (4) "episodes of decompensation." Id. §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ must "rate" the functional degree of limitation in each of these four areas as "[n]one, mild, moderate, marked [or] extreme." Id. §§ 404.1520a(c)(4), 416.920a(c)(4). If the ALJ finds the degree of limitation in each of the first three areas to be "mild" or better and identifies no episodes of decompensation, the ALJ "will generally conclude" that the plaintiff's impairment is "not severe." Id. § 404.1520a(d)(1). Where the claimant's mental impairment is "severe," the ALJ must "determine if it meets or is equivalent in severity to a listed mental disorder." Id. § 404.1520a(d)(2). "If yes, then the [plaintiff] is 'disabled.'" Petrie, 412 F. App'x at 408 (quoting 20 C.F.R. § 404.1520a(d)(2)).

"In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)). However, a court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. See Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998). The Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs.,

6

733 F.2d 1037, 1041 (2d Cir. 1984).

## C. ALJ's Decision

Applying the five-step disability sequential evaluation, the ALJ determined that plaintiff had not engaged in substantial gainful activity since June 12, 2015, the alleged onset date.  T at 11.  The ALJ found at step two of the sequential evaluation that plaintiff had the severe impairments of cannabis dependence, alcohol dependence, and schizoaffective disorder, bipolar type.  Id. at 12.  At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id. at 12-13.  Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC"):

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant retains the ability to understand and follow simple instructions and directions; perform simple tasks with supervision and independently; maintain attention/concentration for simple tasks; regular attend to a routine and maintain a schedule; can relate to and interact with others to the extent necessary to carry out simple tasks but should avoid work requiring more complex interaction or joint effort to achieve work goals, he should have no more than incidental contact with the public and can handle reasonable levels of simple work-related stress in that he can make occasional simple decisions directly related to the completion of his tasks in a stable, unchanging work environment.  "Incidental" is defined as more than never and less than occasional; simply the job should not involve direct interaction with the public but the hypothetical person does not need to be isolated away from the public.

Id. at 14. At step four, the ALJ determined that plaintiff was not capable of performing his past relevant work. Id. at 18. Considering plaintiff's RFC, age, education, and work experience, together with the Medical-Vocational Guidelines, the ALJ further concluded that there were "jobs that exist in significant numbers in the national economy that the claimant can perform." Id. at 19. Therefore, the ALJ determined that plaintiff "has not been under a disability, as defined in the Social Security Act, from June 12, 2015, through the date of this decision[.]" Id. at 20.

### D. Arguments

Plaintiff argues that the ALJ's opinion is not based upon substantial evidence because the ALJ: (1) neglects to review the opinion of consultative examiner Dr. Loomis; (2) improperly relies on the opinion of a Single Decision Maker ("SDM"), who is not an acceptable medical source; (3) fails to incorporate sufficient limitations into the RFC to accommodate plaintiff's limitations with relating adequately to others, properly handling stress, maintaining acceptable levels of work pace, and maintaining acceptable attendance; (4) improperly weighs all medical opinions of record; and (5) presented to the vocational expert a faulty hypothetical as it failed to incorporate the full extent of plaintiff's nonexertional limitations, and, thus, the step five determination is not supported by substantial evidence. See Dkt. Nos. 9, 18.

Defendant argues that: (1) the RFC determination is supported by substantial evidence; (2) the ALJ properly afforded little weight to Dr. Carr's opinion; (3) the ALJ properly afforded partial weight to Dr. Moore's opinion; (4) the ALJ's failure to discuss

Dr. Loomis' opinion is not reversible error; (5) the ALJ properly afforded great weight to state agency psychological consultant Dr. Chapman's opinion; and (6) the ALJ's step five assessment is proper. Dkt. No. 17.

## E.  Analysis

### 1.  Opinion Evidence

Plaintiff makes several arguments which boil down to contending that the ALJ did not properly weigh the opinion evidence. Specifically, he argues that the ALJ erred in failing to assess the opinion of Dr. Loomis, consultative examiner; (2) relying on the opinion of a single decision maker, C. Sloan and crediting it as if made by state agency program psychologist A. Chapman; and (3) according little weight to treating physician Dr. Carr. Dkt. No. 9 at 9-12, 19-21.

### a.  Dr. Loomis

Plaintiff is correct that the ALJ's decision does not set forth an assessment of psychiatric consultative examiner Dr. Loomis' opinion. See T at 9-20. Indeed, the decision explicitly states that the ALJ did not consider any opinion evidence from prior to the alleged onset date, but reviewed such evidence as "background." Id. at 9. Dr. Loomis concluded that plaintiff exhibited no impairment to his abilities to follow and understand simple directions and instructions; perform simple tasks independently; maintain attention and concentration; maintain a regular schedule; learn new tasks; and perform complex tasks independently. T at 1249. However, Dr. Loomis determined

that plaintiff exhibited marked impairment in his abilities to make appropriate decisions, relate adequately with others, and appropriately deal with stress. Id. Her prognosis of plaintiff was "guarded, given his psychiatric diagnoses." Id. at 1250.

Defendant contends that this omission does not amount to reversible error because the consultative opinion occurred on June 13, 2013, long before the alleged onset date of June 13, 2015, and because there is a more recent psychiatric consultative report in the record which the ALJ considered. Dkt. No. 17 at 15. Further, the ALJ notes that Dr. Loomis' opinion "was considered by the prior ALJ in a decision dated June 11, 2015," and that plaintiff "withdrew his request for review of the prior ALJ decision, and thus it stood as the final decision of the Commissioner." Id. at 16. Finally, defendant argues that "disabling-level limitations" presented in Dr. Loomis' evaluation were "already considered and properly rejected in assessing Dr. Carr's opinion . . . including limitations related to responding appropriately to stress and interacting with others." Id.

In response, plaintiff argues that the ALJ's failure to address Dr. Loomis' opinion is prejudicial regardless of the fact that the opinion predates the alleged onset date because the record demonstrates "that Plaintiff has ongoing, similar psychiatric issues from before the onset date and persisting into the onset period"; thus, "Dr. Loomis's opinion is not irrelevant simply because it pre-dates the onset date." Dkt. No. 18-1 at 1. Further, plaintiff argues that the ALJ's consideration, and rejection, of Dr. Carr's opinions does not cure his failure to assess Dr. Loomis' opinion "because it is entirely possibly [sic] that the ALJ would not have rejected Dr. Carr's opinions had there been

10

proper consideration of Dr. Loomis's opinion." Id. at 2.

Here, the ALJ's failure to address Dr. Loomis' opinion does not amount to reversible error. Although the ALJ did not weigh or explicitly consider Dr. Loomis' opinion, he makes clear that he reviewed all of the pre-onset date medical records "for background[.]" T at 9. Thus, plaintiff's suggestion that the ALJ would not have rejected Dr. Carr's opined limitations had he considered Dr. Loomis' consultative examination is without force. Dkt. No. 18-1 at 2. Plaintiff contends that if the ALJ had "addressed Dr. Loomis' opinion *and given it weight*[,]" it is "reasonable" to conclude that "there would have been a different outcome in this case." Dkt. No. 9 at 10 (emphasis added). However, the Commissioner had previously determined that plaintiff was not disabled during the time period preceding plaintiff's alleged onset date of June 12, 2015, and plaintiff does not dispute that Dr. Loomis' opinion was before the Agency for that review. See, e.g., LaFave v. Comm'r of Soc. Sec., No. 7:16-CV-0621 (GTS), 2017 WL 4011264, at *9 (N.D.N.Y. Sept. 11, 2017) ("Absent an indication that [the p]laintiff has submitted new evidence from that time period that was not considered by the Agency when adjudicating that prior application (something which has not been alleged or shown), there can be no logical argument that evidence prior to the alleged onset date could be used to support [the p]laintiff's arguments that she is disabled.").

The ALJ reviewed in detail the post- alleged onset date report of psychiatric consultative examiner Dr. Moore and the opinions of treating provider Dr. Carr and rejected marked limitations on maintaining attention and concentration similar areas on which Dr. Loomis opined. T at 16-17. Significantly, Dr. Moore's consultative

examination reviewed the same areas of function upon which Dr. Loomis opined.  Id. at 17-18 (rejecting marked limitations on appropriately handing stress, relating adequately with others, making appropriate work decisions, and maintaining a regular schedule).  Insofar as plaintiff suggests that Dr. Loomis' opinion was relevant and the failure to assess it is error because plaintiff has "ongoing, similar psychiatric issues from before the onset date," dkt. no. 18-1 at 1, he has not demonstrated that his condition has significantly worsened since the earlier consultative opinion such that Dr. Loomis' opinion could be used for comparison with the post-onset date evidence.  See LaFave, 2017 WL 4011264, at *9.

To the extent plaintiff argues that an ALJ must[4] consider all medical opinions and that the failure to consider a medical opinion constitutes reversible error, this standard does not apply where, as here, the opinion is from before the onset date.  Although it is within an ALJ's purview to consider pre-onset date evidence, it is not required.  See, e.g., Velez v. Colvin, 3:13-CV-171, 2016 WL 884635, at *5 (D. Conn. Mar. 8, 2016) (quoting Carway v. Colvin, 13 Civ. 2431, 2014 WL 1998238, at *5 (S.D.N.Y. May 14, 2014) ( "Medical evidence that predates the alleged disability onset date is ordinarily not relevant to evaluating a claimant's disability.")); see also Kentile v. Colvin, 8:13-CV-880 (MAD/CFH), 2014 WL 3534905, at *14 n.10 (N.D.N.Y. July 17, 2014) ("[T]he ALJ is not compelled to consider or assign weight to treatment that predates plaintiff's application for disability benefits").  Thus, the ALJ's failure to consider Dr. Loomis' pre-onset date

---

[4] Indeed, even the case law plaintiff cites includes permissive language: that ALJs "*may* consider" evidence from before the alleged onset date.  Dkt. No. 18-1 at 1 (citation omitted).

assessment is not reversible error, especially where, as here, there is sufficient evidence from within the relevant period and there is no evidence that the mental health impairment has significantly progressed. Accordingly, the ALJ's failure to explicitly review and weigh Dr. Loomis' consultative report from before the onset date is not prejudicial, reversible error.

### b.  A. Chapman/C. Sloan

Next, plaintiff argues that the ALJ erred in according great weight to SDM Sloan's opinion and improperly crediting it to A. Chapman, state agency program psychologist. Dkt. No. 9 at 11. He contends that opinions of SDMs are entitled to no weight and do not amount to substantial evidence in support of an RFC. Id. He argues that because the ALJ "uses this opinion both to form the RFC and to discount the opinion of treating psychiatrist, Dr. Carr," the error is "prejudicial." Id. at 12. Defendant argues that the ALJ properly afforded great weight to Dr. Chapman's opinion because "[a]lthough ADM Sloan wrote the mental RFC assessment, it is clear that this assessment was endorse and co-signed by Dr. Chapman" and that Dr. Chapman "reviewed the entire disability determination and signed-off on the conclusions therein." Dkt. No. 17 at 17. Thus, defendant argues, "[t]he ALJ was permitted to review that opinion evidence as reflecting Dr. Chapman's conclusions[.]" Id. In reply, plaintiff contends that the cases defendant cites involve reports cosigned by "a supervising acceptable medical source or a treating physician," but these cases do not apply as: Dr. Chapman is not a treating physician, there is no evidence that Dr. Chapman supervises

SDM Sloan, "there is no indication the SDM is a medical professional," "Defendant cites no cases where this rationale has been applied to a non-examining source," and Dr. Chapman "did not sign next to the SDM's signature, which would indicate co-signing or endorsement, but signed in entirely different spots." Dkt. No. 18-1 at 2. Thus, plaintiff contends that to conclude that Dr. Chapman endorsed SDM Sloan's opinion would require the Court to "engage in conjecture[.]" Id. Finally, plaintiff argues that "even of Chapman did give an opinion," it is entitled to no weight because he did not "provide the required explanations for his opinions." Id.

Although A. Chapman's signature initially appears immediately after the section of the report which reviews the B and C criterion, T at 96, and C. Sloan's signature appears immediately after the residual functional capacity assessment, T at 99, both signatures appear at the conclusion of the report. T at 101. Further, as defendant points out, within the section reviewing the B and C criterion, "PRT - Additional Explanation," Dr. Chapman makes reference to the mental residual function capacity assessment by referring the reader to that section, which reasonably suggests that he endorses the mental residual functional capacity assessment therein. Id. at 96. Therefore, considering the fact that both signatures appear at the conclusion of the report and Dr. Chapman's "section" of the report explicitly refers to the mental residual functional capacity assessment, contrary to plaintiff's contention that the Court would be required to engage in conjecture, it is entirely reasonable for the ALJ to rely on this report as the being the opinion of A. Chapman, PsyD and SDM C. Sloan. T at 101.

"This Court has noted that "ALJs have been instructed by the Social Security

Administration that the opinions of SDMs should not be afforded any evidentiary weight at the administrative hearing level, which has led numerous courts to conclude that assigning any evidentiary weight to a SDM's opinion is an error.'" Ridley v. Comm'r of Soc. Sec., No. 6:16-CV-1353 (WBC), 2018 WL 799160, at *6 (N.D.N.Y. Feb. 8, 2018) (quoting Robles v. Comm'r of Soc. Sec., No. 5:15-CV-1359 (GTS), 2016 WL 7048709, at *5 (N.D.N.Y. Dec. 5, 2016) (internal citation and quotation marks omitted). By contrast, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are considered to be qualified experts in the field of social security disability. 20 C.F.R. § 416.927(e); see Frey ex rel. A.O. v. Astrue, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); Little v. Colvin, 14-CV-0063 (MAD), 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted). Accordingly, the Court concludes that the ALJ's reliance on the opinion of SDM Sloan and A. Chapman is not reversible error as this Court need not engage in conjecture to conclude that the entirety of the opinion was endorsed by A. Chapman, an appropriate medical source and qualified expert.

Insofar as plaintiff argues that Dr. Chapman's opinion should not have been given great weight because Dr. Chapman does not explain the rationale for his

conclusions or opinions, cites only some of the medical evidence, but "never explains why Plaintiff retains the ability to meet the basic mental demands of work notwithstanding the positive symptoms he notes and other significant positive symptoms of record," the opinion demonstrates that Dr. Chapman reviewed all treatment records. Indeed, the report does not cite solely positive treatment records, as it explicitly notes that during the consultative examination, plaintiff demonstrated restless motor behavior, pressured voice, anxious affect, nervous mood, appeared to have poor insight/judgment, and that he walked out of the examination due to an apparent panic attack. T at 95, 99. It also explicitly references a mental status examination wherein plaintiff appeared "emotionally vacant." Id. at 99. Similarly, the report reviewed plaintiff's reported activities of daily living, which included assisting in caring for his mother; cleaning his room; doing laundry; painting; getting along with family except for his brother; caring for a bird; cleaning up the yard after dogs; taking out the garbage; mowing the lawn; shops monthly, albeit quickly; watches television; listens to music; goes to the library and to church; and that he needs reminders for hygiene. Id. at 99. The report explained that plaintiff had normal mental status examinations where he presented with cooperative attitude, good speech, good eye contact, normal memory, normal psychomotor activities, stable mood, fully oriented, logical speech, good judgment, able to resist urges, and good judgment. Id. at 98-99. Thus, on balance, the report does set forth reasons for its conclusions.

Accordingly, as Dr. Chapman and SDM Sloan's report was completed by an acceptable medical source and adequately sets forth its reasoning, which is supported

by medical treatment notes in the record, the ALJ was entitled to give it great weight.

### c. Dr. David Carr

Plaintiff argues that the ALJ erred in according little weight to treating psychiatrist Dr. Carr. Dkt. No. 9 at 13, 19-21. Dr. Carr completed a check box questionnaire dated May 29, 2015, wherein he assigned plaintiff extreme limitations in responding appropriately to criticism from supervisors and responding appropriately to ordinary stressors in a work setting with simple tasks; marked restriction in maintaining attention and concentration, completing "a normal work day and work week without interruptions from psychological based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," interacting appropriately with the general public, getting along with coworkers; and medium restrictions in performing activities within a schedule, maintaining regular attention and/or being punctual within customary tolerances. T at 1253. Dr. Carr opined that plaintiff would be off task for more than 33% of the day and would miss three or more days of work per month due to mental impairments or medication side effects. Id. at 1254. Dr. Carr noted that due to side effects of weight gain and "irability" [sic], plaintiff stopped taking Abilify. Id. Dr. Carr's assessment indicated application to the time period of August 26, 2014 to the date of the assessment, May 29, 2015. Id.

On May 29, 2015, Dr. Carr completed a "questionnaire" asking about plaintiff's substance abuse. T at 1255. Therein, Dr. Carr noted that plaintiff abstains from alcohol but "self-medicates with Cannabis." Id. He noted that plaintiff shows symptoms

17

of anxiety, depression, paranoid thoughts, and suicidal ideation.  Id.  "When his symptoms increase," plaintiff "tends to isolate and will not socialize with others."  Id.  He reported that plaintiff has a "history of using substances to be more social," a "[h]istory of suicidal ideation dating back to when he was an adolescent."  Id.  Further, Dr. Carr opined that plaintiff's "symptoms would remain present without the use of substances."  Id.  A letter dated September 20, 2017, indicated that plaintiff's condition and limitations remained "about the same."  Id. at 1263.

Where a doctor's medical source statement conflicts with his or her treatment notes, the ALJ is justified in not according controlling weight to the doctor's statement.  Cichocki v. Astrue, 534 F.3d. 71, 76 (2d Cir. 2013); see also Woodmancy v. Colvin, 577 F. App'x 72, 75 (2d Cir. 2014) (affirming a decision to afford treating physician opinions little weight where "record evidence of unremarkable clinical findings contradicted or failed to support the limitations conclusions in these opinions").  In assigning Dr. Carr's opinion little weight, the ALJ concluded that Dr. Carr's assessments "are not consistent with and supported by his own mental status examinations that generally show the claimant as well-oriented, alert, with a euthymic mood, an intact ability to focus and intact cognitive functioning."  T at 21.

Here, The ALJ acknowledged that Dr. Carr is a treating source, but noted the extent of the restrictions he identified were not consistent with the objective medical evidence contained in his progress notes.  T at 16.  First, the ALJ noted "no objective evidence or observation in Dr. Carr's notes that suggest the claimant would have marked and/or extreme limitations on [sic] interacting with others in a work setting[.]"  Id.

Similarly, the ALJ observed that the treatment notes do not support Dr. Carr's off task and absence ratings.  Id.  The ALJ observed that Dr. Carr's treatment notes and consultative examiner Dr. Moore's report "show that claimant is able to focus and attend, give extended medical and psychosocial histories, explain himself and advocate for himself."  Id.  The ALJ asserts that the evidence does not support being off task for 33% of the time.  Id. at 17. Further, the ALJ rejects Dr. Carr's opinion for failing to account for plaintiff's reported activities of daily living, including his relationship with a significant other, painting, reading, shopping, doing laundry, traveling alone, "all of which show an ability to focus, make independent decisions and exercise judgment." Id. Additionally, the ALJ notes that "Dr. Carr consistently rated the claimant as having a GAF score of 60, which is indicative of essentially mild-moderate functional limitations" which is "not consistent with the doctor's marked and extreme ratings in the May 2015 and subsequent assessments."  Id. The ALJ also points to gaps in plaintiff's in psychiatric treatment.  Id.

Many of Dr. Carr's treatment records demonstrated that plaintiff presented as well-oriented, alert, euthymic, intact cognitive function, appropriate speech, normal memory, able to maintain eye contact, able to focus, stable mood, and that he was doing well with Abilify.  T at 1225-27, 1229, 1274, 1307-08, 1311.  In reviewing Dr. Carr's treatment records, the ALJ took into account that plaintiff was frequently documented as having the ability to maintain attention and focus. Id. at 1195, 1197, 1200, 1223, 1226, 1229, 1248, 1274, 1299, 1308, 1311.  The ALJ also reasonably considered that Dr. Carr assessed plaintiff as having a GAF score of 60, which

demonstrates moderate, not marked or extreme limitations.[5]  Id. at 17.  It is not error for

the ALJ to assign limited weight to a treating physician's opinion where his opinions are

contradicted with his own objective evidence and evidence from other providers.   In

reviewing Dr. Carr's records, the ALJ reasonably considered plaintiff's activities of daily

living which demonstrate his capacity to perform various activities, including those

requiring interacting with others, maintaining relationships, engaging in hobbies, and

traveling by public transport, and concluded that those activities contrasted with the very

limiting assessment set forth in Dr. Carr's medical source statement.  Id.  Although

plaintiff points to treatment notes wherein he sometimes presented as anxious or

otherwise having non-normal mental status examinations,[6] dkt. no. 9 at 4-7, 19-20, the

many normal mental status examinations in the record provide substantial evidence to

support the ALJ's determination to reject those portions of Dr. Carr's opinion showing

marked or extreme limitations.  The ALJ has the discretion to weigh the evidence of

record and resolve any conflicts therein.  See, e.g., Bliss v. Colvin, 13-CV-1086

(GLS/CFH), 2015 WL 457643, at *7 (N.D.N.Y. Feb. 3, 2015) ("It is the ALJ's sole

responsibility to weigh all medical evidence and resolve material conflicts where

---

[5] See Addonisio v. Saul, No. 17-CV-1013 (KAM), 2020 WL 730555, at *6 n.5 (E.D.N.Y. Feb. 13, 2020) ("The GAF scale is used to rate the seriousness of a plaintiff's mental illness and how much a plaintiff's symptoms affect his or her daily life on a scale of 1 to 100, with 1 being the lowest possible level of functioning. As courts within this district have noted, the Administration has cautioned against relying on GAF to evaluate disability because 'there is no way to standardize measurement and evaluation.' The Administration has also instructed ALJs to 'treat GAF scores as opinion evidence' and that 'the details of the clinician's description, rather than a numerical range, should be used.' See, e.g., Mainella v. Colvin, No. 13-CV-2453, 2014 WL 183957, at *5 (E.D.N.Y. Jan. 14, 2014) (additional internal citation omitted)).

[6]  The Court observes that many of the treatment records plaintiff cites to support abnormal mental status examinations are from as early as 1999 to 2008, well before the onset date, and from 2014, which a year before the onset date.  Dkt. No. 9 at 4-7.

sufficient evidence provides for such."); accord. Petell v. Comm'r of Soc. Sec., 12-CV-1596 (LEK/CFH), 2014 WL 1123477, at *10 (N.D.N.Y. Mar. 21, 2014). Thus, the ALJ was within his discretion to accord Dr. Carr's opinion little weight because record evidence of generally unremarkable clinical findings fail to support to the marked and extreme limitations reached in his medical source statement. It was, therefore, not error for the ALJ to accept only those portions of the opinion evidence that were consistent with the evidence in the record.

In sum, although Dr. Carr is a treating physician, the ALJ's determination to accord his opinion little weight is supported by substantial evidence in the record due to plaintiff's presenting with normal mental status evaluations and having fairly broad activities of daily living. See 20 C.F.R. § 404.1527(d)(2); see also Monroe v. Comm'r of Soc. Security, 676 F. App'x 5, 7-8 (2d Cir. 2017) (summary order) (deferring to the ALJ's rejection of a treating physician's opinion where the physician's opinion was contrary to his own treatment notes and noting that the ALJ properly explained his reasons for rejecting the opinion); cf. Gavazzi v. Berryhill, 678 F. App'x 98, 100 (2d Cir. 2017) (summary order) (reversing and remanding Agency's determination where the ALJ failed to explain his reasons for rejecting portions of the treating physician's opinion).

### d. Dr. Moore

Plaintiff also argues that the ALJ erred in affording partial weight to psychiatric consultative examiner Dr. Moore. T at 17. Dr. Moore completed a evaluation on

October 7, 2017.  T at 1236.  Dr. Moore reported plaintiff to be "generally cooperative and responds to questions" though notes that he left a consultative examination apparently due to a panic attack and needed to be persuaded to return. [7]  Id. at 1238. Plaintiff's hygiene was fair, with normal posture, restless motor behavior, and appropriate eye contact.  Id.  His speech intelligibility was fluent, his voice was pressured, his expressive and receptive language skills were adequate.  Id.  Plaintiff had coherent and goal directed though processes with no evidence of hallucinations, delusions, or paranoia.  Id.  His affect was anxious, his mood was nervous, his sensorium was clear.  Id. at 1238-39.  His was oriented x3, with intact attention, concentration, and recent/remote memory skills.  Id. at 1239.  Plaintiff's insight "[a]ppeared poor" and his judgment "[a]ppeared poor with continued impulsivity, anger, anxiety, and mood swings."  Id.

Dr. Moore assessed no limitation in following and understanding simple directions and instructions, performing simple tasks independently, maintaining attention and concentration in learning new tasks, or performing complex tasks independently.  T at 1239.  She assessed marked limitations in appropriately dealing with stress, relating adequately with others, making appropriate work decisions, and maintaining a regular work schedule.  Id.  Dr. Moore reported her assessment to be "consistent with psychiatric issues which may significantly interfere with the claimant's ability to function on a daily basis."  Id.  Her prognosis for plaintiff is guarded.  Id.

---

[7]  There is no indication that the psychiatric consultative examiner made any assessment or conclusion regarding the alleged panic attack, as it appears plaintiff left his separate physical consultative examination, not his examination before the psychiatric consultative examiner.  Regardless, Dr. Moore made no finding regarding this alleged behavior.

The ALJ found Dr. Moore's examination findings to be "something of an outlier when read in the context of the longitudinal medical record." T at 17. Specifically, her conclusions of marked limitations "are not consistent with the record over time which shows that the claimant has generally presented as euthymic, well oriented and alert, with good eye contact, logical/coherent speech, normal recent/remote memory, normal psychomotor behavior and with an ability to attend and maintain focus. Id. at 17-18. The ALJ further noted that Dr. Moore "did not have the benefit of hearing the claimant's testimony which indicated he performs a range of activities of daily living that involve interacting with others, nor did she have the benefit of reviewing the claimant's mental health progress notes showing that the claimant generally presents with an euthymic mood and normal psychomotor behavior." Id.

The ALJ's decision to accord Dr. Moore's opinion partial weight is supported by substantial evidence. As the ALJ sets forth, although Dr. Moore concluded that plaintiff would have marked limitations in appropriately dealing with stress, relating adequately with others, making appropriate work decisions, and maintaining a regular work schedule, she does not provide a basis for such limitations. See T at 1236. Despite reporting that plaintiff appeared anxious and nervous and had pressured speech, she noted that his speech was fluent, and he was coherent, oriented x3, had intact attention/concentration and recent/remote memory skills. Id. at 1238. Further, she concluded that he had no limitations with following simple directions or instructions, performing simple or complex tasks independently, maintaining attention and concentration in learning new tasks. Id. at 1239.

23

That treating physician Dr. Carr and consultative examiner Dr. Moore both concluded that plaintiff had marked limitations in handling stress, relating with others, and maintaining a work schedule does not mean that the ALJ must accept those conclusions. An ALJ is "not required to adhere to the entirety of [the consultative examiner's] opinion when formulating [a p]laintiff's RFC and rather provided for the limitations within that opinion which he concluded were supported by the other evidence of record. Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); Zongos v. Colvin, No. 12-CV-1007 (GLS/ESH), 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that the ALJ had discretion to afford weight to a portion of a treating physician's opinion but not to another portion). Accordingly, the ALJ's decision to accord Dr. Moore's opinion partial weight is supported by substantial evidence.

## 2. Residual Functional Capacity Assessment

Plaintiff next argues that the RFC fails to account for limitations in plaintiff's ability to (1) relate adequately with others, (2) properly handle stress, and (3) maintain acceptable levels of work place and/or attendance. Dkt. No. 9 at 12-18. Further, plaintiff contends that defendant "misunderstands the nature of plaintiff's psychiatric issues" as plaintiff "does not deny that there are times when [he] can function properly" but "[t]he problem is significant issues with anger, anxiety, panic, etc. that rear their

head with sufficient frequency that he is unable to meet the demands of work on a regular and continuing basis and in accordance with employer standards." Dkt. No. 18-1 at 3.

An RFC is defined as " 'what an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.'" Pardee v. Astrue, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) ). "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." Pardee, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a) ). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work  .. . must be reflected in the RFC assessment.'" Hendrickson v. Astrue, 11-CV-0927, 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting SSR 85-15, 1985 WL 56857, at *8). The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).

Plaintiff objects to the RFC for failing to sufficiently account for plaintiff's impairments in maintaining acceptable levels of work pace and attendance, relating adequately with others, and handling stress.  T at 10-16.  However, the ALJ explained his reasons for rejecting Dr. Carr's opinion that plaintiff would be off task for more than

33% percent of the day, absent more than three days per week. T at 17. As discussed in detail above, the ALJ explained that Dr. Carr's notes do not suggest marked or extreme limitations in these areas of functioning as the overall mental status examinations were normal. Id. The ALJ further noted that consultative examiner Dr. Moore's reports also did not support such limitations and also failed to account for plaintiff's activities of daily living, which suggest a higher level of functioning. T at 17. "The ability to maintain a regular schedule falls under the category of concentration and persistence." Lowry v. Comm'r of Soc. Sec., No. 1:15-CV-1553 (GTS/WBC), 2017 WL 1290685, at *4 (N.D.N.Y. Mar 16, 2017) (internal citation omitted). "There is significant case law indicating that the ALJ's limitation of [a p]laintiff to 'simple, routine tasks' and 'working primarily alone, with only occasional supervision' accounts for [his or] her limitations for performing activities within a schedule and maintaining regular attendance." Shannon v. Berryhill, No. 6:15-CV-6796, 2018 WL 6592181, at *3 (W.D.N.Y. Dec. 13, 2018) (citing cases). Thus, the ALJ's assessment of plaintiff's ability to maintain schedule and work place is adequately accounted for in the RFC.

Similarly, insofar as plaintiff contends that the RFC fails to sufficiently account for an ability to relate adequately with others or handle work stress, because the ALJ's decision to reject those portions of the opinion evidence finding significant limitations in these areas of functioning is supported by substantial evidence, the RFC adequately accounts for these areas of functioning. The ALJ found moderate limitations in relating adequately to others, noting plaintiff's reports that he does not get along with others and has been laid off from work due to inter-personal conflicts. T at 13. Further, the ALJ

considered: plaintiff's relationship with his girlfriend; his home environment, which included living with extended family and his sister's boyfriend and son; his ability to take public transit, go to appointments, shopping, and group counseling; desire to maintain a relationship with his children; and his ability to interact normally with medical providers. Id. The ALJ reasonably concluded that this all demonstrated "his ability to leave home as wanted or necessary" and that he is "able to interact with others in a wide range of everyday, common situations." Id. The RFC limits plaintiff to interacting with others "to the extent necessary to carry out simple tasks but should avoid work requiring more complex interaction or joint effort to achieve work goals" and "incidental contact" with the public, defined as "more than never and less than occasional" where he did not have direct interaction with the public but not needing to be isolated from the public. Id. at 14; see Whipple v. Astrue, 479 F. App'x 367, 370 (2d Cir. 2012) (summary order) (holding that the consultative examiners' conclusion that the plaintiff's depression and anxiety caused moderate limitations in social functioning was sufficiently accounted for where the RFC limited the plaintiff to simple tasks and a low-stress environment). Thus, the RFC reasonably accounts for moderate limitations in relating adequately with others, and such conclusion is supported by substantial evidence in the record, including plaintiff's relatively normal mental status examinations and overall activities of daily living.

To the extent that plaintiff argues that the RFC does not adequately account for his limitations in adequately handling stress, the RFC limits plaintiff to performing simple tasks, following simple instructions and directions, and "handl[ing] reasonable levels of

simple-work related stress in that he can make occasional simple decision directly related to the completion of his tasks in a stable, unchanging work environment." T at 14. For the reasons reviewed above, as the objective medical evidence does not support marked limitations in handling stress, substantial evidence supports the RFC insofar as it limits plaintiff to simple tasks with minimal interaction with others or change in his environment. Id.

Although plaintiff disputes the ALJ's RFC assessment and believes the medical evidence supports greater limitations than those accounted for in the RFC, the ALJ provided sufficient reasoning for his conclusions relating to the medical and opinion evidence and his explanation is supported by the Court's review of the evidence he cites in support. It is not the Court's role to re-weigh that evidence. See Warren v. Comm'r of Soc. Sec., 15-CV-1185 (GTS/WBC), 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016) ("When applying the substantial evidence test to a finding that a plaintiff was not disabled, the Court 'will not reweigh the evidence presented at the administrative hearing . . . nor will it determine whether [the applicant] actually was disabled. [Rather], [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to support it.' "), Report-Recommendation adopted 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016) (quoting Lefford v. McCall, 916 F. Supp. 150, 155 (N.D.N.Y. 1996)); Vincent v. Shalala, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing Carroll v. Sec'y of Health and Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)); Lewis v. Colvin, 122 F. Supp. 3d 1, 7 (N.D.N.Y. 2015) (noting

that it is not the role of a court to "re-weigh evidence" because "a reviewing court 'defers to the Commissioner's resolution of conflicting evidence' where that resolution is supported by substantial evidence") (quoting Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012); citing Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507 (2d Cir. 2009)). Indeed, the ALJ had "both the ability and the responsibility to resolve conflicts in the evidence and to weigh all of the available evidence 'to make an RFC finding that is consistent with the record as a whole.'" Carbee v. Comm'r of Soc. Sec., No. 1:17-CV-0051 (GTS), 2018 WL 333516, at *14 (N.D.N.Y. Jan. 9, 2018) (quoting Matta, 508 F. App'x at 56). Further, "[a]lthough the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, [the ALJ is] entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." Matta, 508 F. App'x at 56.

Here, there is sufficient evidence backing the ALJ's determination that plaintiff's mental and physical impairments are not more severe than set forth in the RFC. Having carefully reviewed the treatment notes plaintiff highlights and the totality of plaintiff's medical records, the Court finds that the ALJ's RFC is supported by substantial evidence, bearing in mind that "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. Even assuming, arguendo, that record evidence could provide substantial evidence for a conclusion that plaintiff is disabled by his mental health conditions, that is not the standard the Court is to apply. If supported by substantial evidence, the Commissioner's finding must be sustained "even where

substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado, 805 F. Supp. at 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984). As the ALJ's mental RFC determination is supported by the totality of the record before him and by plaintiff's activities, the ALJ's determination must be affirmed.

### 3. Step Five Finding

Although plaintiff has the general burden to prove he has a disability under the definitions of the Social Security Act, the burden shifts to the Commissioner at step five "'to show there is other work that [the claimant] can perform.'" McIntyre v. Colvin, 758 F.3d 146, 150 (2d Cir. 2014) (quoting Brault v. Soc. Sec. Admin., 683 F.3d 443, 445 (2d Cir. 2012)). "An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion' [ ] and [the hypothetical] accurately reflect[s] the limitations and capabilities of the claimant involved." McIntyre, 758 F.3d at 151 (quoting Dumas v. Schweiker, 712 F.2d 1545, 1553-54 (2d Cir. 1983); citing Aubeuf v. Schweiker, 649 F.2d 107, 114 (2d Cir. 1981)). If a hypothetical question does not include all of a claimant's impairments, limitations,

and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." <u>Pardee v. Astrue</u>, 631 F. Supp. 2d 200, 211 (N.D.N.Y. 2009) (citing <u>Melligan v. Chater</u>, No. 94-CV-944S, 1996 WL 1015417, at *8 (W.D.N.Y. Nov. 14, 1996)).

Plaintiff argues that the step five finding is not supported by substantial evidence because the hypothetical presented to the vocational expert did not include all of plaintiff's nonexertional limitations, specifically staying on task and work pace, maintaining acceptable levels of attendance, relating with others, and handling work-related stress. Dkt. No. 9 at 23-24. The ALJ's decision provides sufficient, supported explanation for his findings, and plaintiff has not established further limitations based on the evidence of record. Further, the hypothetical posed to the vocational expert accurately reflected the RFC, which the Court has found to be supported by substantial evidence. As the Court has already concluded that the ALJ did not err in weighing the opinion evidence and formulating the RFC, plaintiff's conclusory argument that errors in those findings resulted in an incomplete hypothetical question to the vocational expert is also without force. Accordingly, the Court finds that there is no reversible error in the ALJ's step five finding.

### III. Conclusion

Having carefully reviewed the record in light of plaintiff's arguments, the undersigned concludes that the Commissioner's determination resulted from the application of proper legal principles supported by substantial evidence. Wherefore, for

the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's Motion for Judgment on the Pleadings (dkt. no. 9) is **DENIED**; and it is further

**ORDERED**, that defendant's Motion for Judgment on the Pleadings (dkt. no. 17) is **GRANTED**; and it is further

**ORDERED**, that defendant's decision is **AFFIRMED** and plaintiff's complaint is **DISMISSED**.

**IT IS SO ORDERED**.

Dated: March 6, 2020
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge